1

2

3

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

4

5

WILLIAM R. FAYANT and JULIE L.
FAYANT,

No.    2:16-CV-00139-SMJ

6

                         Plaintiffs,

**ORDER GRANTING
DEFENDANTS' MOTIONS AND
ORDER TO SHOW CAUSE**

7

           v.

8

9

U.S. BANK NATIONAL
ASSOCIATION and WASHINGTON
TRUST BANK,

10

                         Defendants.

11

12

13

14

15

16

17

18

19

20

Before the Court, without oral argument, are Defendants Washington Trust Bank and U.S. Bank National Association's Motions to Dismiss, ECF Nos. 13 and 16, respectively. Through these motions, Defendants seek to have the Plaintiffs' complaint dismissed for failure to state a claim upon which relief can be granted. *See generally* ECF Nos. 13 and 16. Before Plaintiffs replied to Defendants' motions, the Court notified all parties that, pursuant to Federal Rule of Civil Procedure 12(d), it would treat the motions to dismiss as summary judgment motions. ECF No. 25. However, for reasons detailed below, the Court reviews the motions under the motion to dismiss standard. Plaintiffs oppose Defendants' motions. *See* ECF Nos. 28 and 29.

ORDER GRANTING DEFENDANTS' MOTIONS AND ORDER TO SHOW
CAUSE **- 1**

Having reviewed the pleadings and the file in this matter, the Court is fully informed and **GRANTS** Defendants' motions. The Plaintiffs fail to present a cognizable legal theory or to allege sufficient facts to support a cognizable legal theory, necessitating their complaint's dismissal. Further, because, as detailed below, this and other courts have repeatedly rejected nearly identical claims filed by Plaintiffs' counsel, Jill Smith, the Court **ORDERS** Ms. Smith to show cause why the Court should not impose sanctions or recommend disciplinary proceedings against her and **ORDERS** Defendants' counsel to file a statement concerning attorneys' fees.

## I.    BACKGROUND

In 2005 and 2006, Plaintiffs and Spokane County, Washington residents William Robert Fayant and Julie Lorraine Fayant obtained loans from Cherry Creek Mortgage ("Cherry Creek") and Washington Trust Bank ("WTB"). ECF Nos. 14, 14-1, 14-2, 17, and 17-1. The Cherry Creek loan and relevant documents concerning the loan were subsequently endorsed and assigned to U.S. Bank National Association ("U.S. Bank"). ECF Nos. 17 and 17-1. They used their home in Liberty Lake, Washington as collateral for the loans. ECF Nos. 14-2 and 17-1 (deeds of trust encumbering the subject property).

About a decade later, in a letter dated September 24, 2015, Plaintiffs purported to rescind the subject loans. ECF No. 1-1. Four days later, Plaintiffs

sent another letter to the same parties purporting to void any security interest U.S. Bank, Cherry Creek or WTB had in the Plaintiffs' home. *Id.* Aside from noting the loan numbers, the letters do not provide the date on which the loans were secured.

Several months later, on April 29, 2016, Plaintiffs filed their complaint against U.S. Bank, Cherry Creek, and WTB. ECF No. 1. In it, Plaintiffs allege violations of the Truth in Lending Act ("TILA" or "the Act") and seek injunctive relief. *See generally* ECF No. 1. Specifically, Plaintiffs state that they mailed U.S. Bank, Cherry Creek, and WTB the rescission notices in September 2015. Plaintiffs claim none of the three institutions complied with their purported duties as allegedly set forth in TILA. This, Plaintiffs allege, led to the cancellation and voiding of the loan contracts and notes encumbering their home by operation of law. *Id.* at 2–3. They also claim that the loan in dispute was never consummated. *Id.* at 3. Moreover, Plaintiffs allege that on January 21, 2016, they "filed and had recorded with the Spokane County [*sic*] an Affidavit of Rescission, instrument # 6466789 of a loan transaction." *Id.* at 4. Plaintiffs state they attached it as Exhibit C of the complaint, but no such exhibit is attached to the complaint or present elsewhere in the record. As relief to the asserted harm, Plaintiffs seek temporary, permanent, and mandatory injunctions against U.S. Bank, Cherry Creek, and WTB. *Id.* at 4–6.

ORDER GRANTING DEFENDANTS' MOTIONS AND ORDER TO SHOW CAUSE - 3

About two months after Plaintiffs filed their complaint, on June 21, 2016, the Court approved the parties' stipulated motion to dismiss then Defendant Cherry Creek from this lawsuit. ECF No. 10. Three days later, Defendant WTB filed its Rule 12(b)(6) motion to dismiss the complaint. ECF No. 13. About a month later, Defendant U.S. Bank also filed a Rule 12(b)(6) motion to dismiss the complaint. ECF No. 16.

Thereafter, the Court set a briefing schedule for the parties' response and reply briefs—and also granted Plaintiffs' request to file a surreply brief—addressing Defendants' motions to dismiss. ECF Nos. 24, 25, and 39. Also, in an abundance of caution, the Court alerted the parties that it would consider the Defendants' motions to dismiss as motions for summary judgment pursuant to Rule 12(d). ECF No. 25; *see* Rule 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.")

## II.    MOTION TO DISMISS STANDARD

A claim may be dismissed pursuant to Rule 12(b)(6) either for lack of a cognizable legal theory or failure to allege sufficient facts to support a cognizable legal theory. *Taylor v. Yee*, 780 F.3d 928, 935 (9th Cir. 2015). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### III.   DISCUSSION

U.S. Bank and WTB moved to dismiss the complaint pursuant to Rule 12(b)(6) claiming: (1) Plaintiffs' rescission argument is factually unsupported; (2) the claims are time-barred, (3) Plaintiffs have not offered to tender the borrowed funds as TILA requires; and (4) res judicata and judicial estoppel bars the claims. ECF No. 13 at 7–20; ECF No. 16 at 5–11.

As noted above, the Court notified the parties that it would treat the motions as summary judgment motions to provide the parties adequate time to brief the issues, thus permitting the Court to consider material beyond the complaint in

ORDER GRANTING DEFENDANTS' MOTIONS AND ORDER TO SHOW CAUSE - 5

reaching a decision. ECF No. 25. However, in certain circumstances, courts can consider documents outside the pleadings without converting a 12(b)(6) motion into a Rule 56 motion for summary judgment. Particularly, where a complaint incorporates documents by reference or attaches documents to the complaint, or in matters of judicial notice, courts may consider these materials without implicating Rule 12(d). *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). This is also true where a "plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* Upon review of the parties' filings and the case file, this doctrine applies to the documents the Court considered in reaching its decision. Further, and as discussed below, the Plaintiffs fail to present a cognizable legal theory. Accordingly, the Court conducts its analysis under the motion to dismiss standard and dismisses the complaint.

### A. Plaintiffs fail to present a cognizable legal theory.

#### 1.    Truth in Lending Act

"Congress passed the Truth in Lending Act, 82 Stat. 146, as amended, to help consumers avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing." *Jesinoski v. Countrywide Home Loans, Inc.*, 135 S.Ct. 790, 791–92 (2015) (citing 15 U.S.C. § 1601(a)) (internal quotations omitted). The Act permits certain borrowers to rescind a loan "until midnight of the third business day following consummation of the transaction or

the delivery of the [disclosure required by the Act], whichever is later, by notifying the creditor, in accordance with regulations of the [Federal Reserve] Board, of his intention to do so." *Id.* at 792 (citing 15 U.S.C. § 1635(a)) (internal quotation omitted). The Act also temporally limits borrowers' right to rescind. Three years from the date the transaction is consummated or upon the property's sale, whichever comes first, the right to rescind expires. *Id.* (citing 15 U.S.C. § 1635(f)). This applies even if the lender never made the required disclosures. *Id.* These protections apply to "any consumer credit transaction . . . in which a security interest . . . is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended." 15 U.S.C. § 1635(a). A borrower "need only provide written notice to a lender in order to exercise his right to rescind." *Jesinoski*, 135 S.Ct. at 793.

A transaction is consummated under TILA at the "time that a consumer becomes contractually obligated on a credit transaction." *Jenkins, et al v. Wells Fargo Bank, N.A.*, No. Cl6-452-TSZ, 2016 WL 7440867, *2 (W.D. Wash. Dec. 27, 2016) (citing *Jackson v. Grant*, 890 F.2d 118, 120 (9th Cir. 1989)). State law determines when a person becomes contractually obliged. *Id.* (citations omitted). In Washington, a contract is formed when the parties objectively manifest their mutual assent to sufficiently definite contractual terms. *Keystone Land & Dev. Co.*

ORDER GRANTING DEFENDANTS' MOTIONS AND ORDER TO SHOW CAUSE - 7

*v. Xerox Corp.*, 152 Wn.2d 171, 177–78 (2004). Consideration must also support the contract. *Jenkins*, 2016 WL 7440867 at *2 (citations and quotations omitted).

### 2.   The record indicates the subject loans were consummated and rescission has long been unavailable to Plaintiffs.

Plaintiffs' theory of their case focuses on events from 2015. In short, Plaintiffs argue that since more than twenty days passed from when Defendants received the notices of rescission mailed in September 2015, Plaintiffs' financial obligations under the subject loans ended. ECF No. 1 at 2–3; ECF No. 28 at 2; ECF No. 29 at 2. They also take the seemingly contradictory position that the subject loans were never consummated. ECF No. 1 at 3; ECF No. 28 at 2; ECF No. 29 at 2. These positions are in disaccord. As at least one other court has noted in fielding a case asserting substantially similar claims under substantially the same legal theory, "[e]ither the loan was consummated when the promissory note and deed of trust were executed . . . and plaintiffs' July 2015 notice of rescission is untimely, or the loan is unconsummated and there is nothing to rescind." *Jenkins*, 2016 WL 7440867 at *2.

Here, the record indicates that Plaintiffs executed documents that consummated the subject loans with Defendants as lenders. ECF No. 14 (Decl. of Christopher G. Varallo); ECF No. 14-1, Ex. A. (credit agreement between WTB

ORDER GRANTING DEFENDANTS' MOTIONS AND ORDER TO SHOW CAUSE - 8

and Plaintiffs and dated September 19, 2006); ECF No. 14-2, Ex. B (note encumbering Plaintiffs' subject property and naming WTB as grantees, dated September 12, 2006); ECF No. 17 (Affidavit of Mary D. Lee explaining that Cherry Creek granted to U.S. Bank the note encumbering the subject property and noting that Plaintiffs signed a TILA disclosure statement in 2005); ECF No. 17-1, Ex. A (loan settlement statement providing Plaintiffs with a $204,000 loan from Cherry Creek, dated April 27, 2005); ECF No. 17-1, Ex. B (note signed by Plaintiffs promising to pay the subject loan, which was endorsed without recourse by Cherry Creek to U.S. Bank, dated April 22, 2005); ECF. No. 17-1, Ex. C (deed of trust between Plaintiffs and Cherry Creek that was subsequently assigned to U.S. Bank, dated April 22, 2005); ECF. No. 17-1, Ex. D (TILA disclosure statement signed by Plaintiffs on April 22, 2005).

Plaintiffs also argue that the Court should deny U.S. Bank's motion to dismiss because the documents at issue regarding the U.S. Bank loan were confusing and the true lender was not properly identified. ECF No. 29 at 6–9. Yet Plaintiffs' own alleged course of conduct supports that they knew the identities of the institutions from which they borrowed. Filings from Plaintiffs' bankruptcy proceedings list U.S. Bank and WTB as creditors with an interest in the subject property. ECF No. 14-1, Ex. H at 103 (listing U.S. Bank and WTB as creditors holding secured claims in the subject property and noting the dates on which the

ORDER GRANTING DEFENDANTS' MOTIONS AND ORDER TO SHOW CAUSE - 9

claims were incurred). Although the exhibit is hard to read in some places, the document notes the dates when Plaintiffs incurred their debts to Defendants as being in either 2005 or 2006. *Id.* In either case, that is well before the purported notices of rescission were sent in September 2015.

These facts overwhelmingly support the Court's finding that the subject loans were consummated over ten years ago. Therefore, under TILA, the three-year period available for Plaintiffs to seek the loans' rescission has well since passed. Given that Plaintiffs do not assert a cognizable legal theory as detailed above, it is unnecessary for the Court to consider the parties' remaining arguments and the Court **DISMISSES** the complaint. Moreover, for the reasons detailed below, the Court does so with **PREJUDICE**.

## IV.   ORDER TO SHOW CAUSE

The Court is well aware that it is one of several federal courts in which Plaintiffs' counsel, Jill Smith, has sought to test a legal theory that courts have repeatedly rejected. *See, e.g.*, *Johnson v. Bank of New York Mellon*, No. C16-0833JLR, 2016 WL 4211529, *1 n. 1 (W.D. Wash. Aug. 10, 2016) (listing nine cases in which Plaintiffs' counsel has unsuccessfully asserted substantially similar claims and advanced essentially the same legal theory). Several of these courts have imposed monetary and other sanctions on Ms. Smith. *Id.* Indeed, Chief Judge Rice in this very district has presided over a strikingly similar case and recently

ORDER GRANTING DEFENDANTS' MOTIONS AND ORDER TO SHOW CAUSE - 10

imposed sanctions on Plaintiffs' counsel in the amount of $5,000 and ordered her to pay the defendant's attorneys' fees in the amount of $5,869.16. *Brophy v. J.P. Morgan Chase Bank*, No. 16-CV-053-TOR, ECF No. 27 (E.D. Wash. Jan. 17, 2017). In deciding to impose sanctions, Chief Judge Rice assessed the legal theory Ms. Smith presented—which is essentially the same as the one advanced in this Court—and found it legally frivolous. *Id.* at 19.

The Court has compared the complaint and other filings in the instant case with those in *Brophy*. The complaints are astonishingly similar, indeed they are almost carbon copies of each other save for a few factual details. Moreover, several of Ms. Smith's filings in both cases are substantially the same. The factual differences, particularly the fact that here, Plaintiffs Fayant recorded an "Affidavit of Rescission" whereas the *Brophy* plaintiffs did not, do not lead to an outcome in this case different from that in *Brophy*. This fact calls into question Ms. Smith's representations to the Court.

Moreover, Ms. Smith's actions have led this and multiple other courts to expend limited judicial resources on matters that likely should never have been brought before our courts in the first instance—at least since Ms. Smith was first made aware that her legal theory concerning rescission under TILA is meritless. Indeed, by this Court's count, including the case at bar, Ms. Smith has filed at

ORDER GRANTING DEFENDANTS' MOTIONS AND ORDER TO SHOW CAUSE - 11

least **thirteen** cases in federal courts presenting the same frivolous argument.[1] Perhaps more disturbingly, Ms. Smith has presumably been charging members of the public attorneys' fees knowing full well that courts have repeatedly found no merit to her legal theory concerning rescission actions under TILA. This Court is duty-bound to protect the public from harm. Accordingly, the Court must consider the harm or potential harm of Ms. Smith's actions on members of the public in deciding whether to impose sanctions and, if so, determining appropriate sanctions in this case.

Ms. Smith could have easily taken steps to prevent the imposition of sanctions in other cases, and potentially in this case, by comporting with Rule 11. The Advisory Committee Notes to Rule 11 indicates that the

> rule continues to require litigants to 'stop-and-think' before initially making legal or factual contentions. It also, however, emphasizes the duty of candor by subjecting litigants to potential sanctions for insisting upon a position after it is no longer tenable and by generally providing protection against sanctions if they withdraw or correct contentions after a potential violation is called to their attention.

Fed. R. Civ. P. 11 advisory committee's notes to 1993 Amendment subdivisions (b) and (c). This language makes clear that once Ms. Smith had reason to know

---

[1] Chief Judge Rice notes that the court in *Johnson v. Mellon*, No. C16-0833JLR, 2016 WL 4211529, (W.D. Wash. Aug. 10, 2016), identified at least ten cases asserting the same arguments. *Brophy*, No. 16-CV-053-TOR, ECF No. 27 at 25. Counting *Brophy* and the instant case makes at least thirteen.

ORDER GRANTING DEFENDANTS' MOTIONS AND ORDER TO SHOW CAUSE **-** 12

that the arguments presented in this case were roundly rejected by other courts, she had a duty to make this Court aware of those decisions. Yet, she did not.

The discussion above leads this Court to ask—what will it take for Ms. Smith to cease filing the same frivolous lawsuits asserting a legally flawed reading of TILA? Monetary sanctions have so far failed, necessitating other action. Indeed, in addition to likely imposing monetary sanctions, Judge Zilly in the Western District of Washington recently notified Ms. Smith that he is considering requiring Ms. Smith to file a copy of his December 27, 2016 order in the case before him along with any order imposing sanctions "each time she files a TILA rescission action in federal court" and referring her to the Washington State Bar Association. *Jenkins*, 2016 WL 7440867 at *4.

Accordingly, this Court **ORDERS** Plaintiffs' counsel Ms. Jill Smith to file with this Court a statement explaining why she believes this Court should not: (1) impose sanctions pursuant to Federal Rule of Civil Procedure 11(c); (2) award Defendants attorneys' fees for the costs incurred in resisting this lawsuit; (3) order Ms. Smith to file a copy of this Order along with any order imposing sanctions each time she files a TILA rescission action in federal court; (4) order Ms. Smith to provide Plaintiffs Fayant with a copy of this Order along with any order imposing sanctions; (5) order Ms. Smith to fully reimburse Plaintiffs for any attorneys' fees or costs paid by Plaintiffs in conjunction with this case and file

ORDER GRANTING DEFENDANTS' MOTIONS AND ORDER TO SHOW CAUSE - 13

certification with the court that have done so, as the court in *Johnson*, 2016 WL 4211529 at *5, previously ordered her to do in a similar case; (6) refer Ms. Smith to the Washington State Bar for potential disciplinary action; and (7) pursuant to Local Rule 83.3, recommend the initiation of disciplinary proceedings to the chief judge of the Eastern District of Washington.

Additionally, the Court **ORDERS** Defendants' counsel to file with this Court a statement detailing the attorneys' fees they incurred in this litigation. Such a statement must state with specificity the hours worked, reasonable hourly rates charged by each attorney and/or other professional who worked on the case, and provide enough information about each person's credentials, qualifications, and experience to allow the Court to render a reasoned judgment on appropriate fees, if any, to award. All counsel are instructed to file such statements **by February 10, 2017**.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendant Washington Trust Bank's Motion to Dismiss, **ECF No. 13**, is **GRANTED WITH PREJUDICE**.

2.  Defendant U.S. Bank's Motion to Dismiss, **ECF No. 16**, is **GRANTED WITH PREJUDICE.**

3.    Plaintiffs' Counsel Ms. Jill Smith of the Natural Resource Law Group PLLC in Seattle, WA is **ORDERED** to file a statement as detailed above **by no later than February 10, 2017.**

4.    Defendant Washington Trust Bank's counsel is **ORDERED** to file a statement as detailed above **by no later than February 10, 2017.**

5.    Defendant U.S. Bank's counsel is **ORDERED** to file a statement as detailed above **by no later than February 10, 2017.**

**IT IS SO ORDERED.**   The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 26th day of January 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge

ORDER GRANTING DEFENDANTS' MOTIONS AND ORDER TO SHOW CAUSE - 15